May it please the court, counsel. My name is Brad Maxa. I'm here representing Todd and Kieran Brandt. The good news is, is this is not an insurance case. This is a default case in the context of an insurance dispute. Right. This is a case where a sophisticated insurance company received a summons and complaint in their legal department and did nothing, did not appear, did not answer. The facts are undisputed, aren't they? They are undisputed. I mean, we know what happened. We know they didn't respond. We know what the judge found, that they found culpability. Right. So where do we go from there? Well, I think the key is that there's one aspect that we don't know what happened, and I think that's a crucial threshold in this case that American Bankers hasn't responded to. We have no idea what the legal department did when it received the summons and complaint. We don't know if it got lost. We don't know if they intentionally ignored it. We don't know if the dog ate it. There's nothing. We know that two different people received a copy of the summons and complaint. What difference does that make? Because they have the burden of proof of coming forward with some excuse. Rule 60B1 says there must be some excusable neglect, and I think the threshold question is, is there some excuse? Now, I've read dozens of cases. You guys probably have, too. Everyone's got an excuse. And what if they say, we have no excuse. We don't know what happened, which is pretty much what they said. That's what they said. We don't know what happened. It went in. It never came out. So what? Either way the judge went on this case probably would have been within his discretion. I mean, it's just a matter of how lenient he wanted to be. This is a real judgment call in terms of the district court judge. He knows the parties he's been involved in, and so it's really difficult for us to second-guess the district court judge. And especially – oh, I'm sorry. Go ahead. Especially when there was a concession that there was a meritorious defense. I mean, the judge took all this into consideration. This is equitable relief that you're asking for. This is equitable relief. It is an abuse of discretion standard, but I think we need to parcel out the two stages of the abuse of discretion standard. The judge is finding that they had no legitimate excuse. That's evaluated based on abuse of discretion. The judge is finding that they were culpable. That's evaluated based on abuse of discretion. But the appropriate legal rule to be applied is de novo. That's for you folks to decide de novo. And I submit that the judge, in the exercise of his discretion, properly found that they had no excuse at all, properly found that they were culpable, but the question is what's the legal rule then? Now that we know that, what's the legal rule? Your argument is once the judge found they were culpable, he didn't have discretion to excuse the default. That's pretty much what your argument is. That's the second part of the argument. The first one, and I don't want to get lost in the shuffle, the first part is you have to have some excuse in the first place even to get to the Falk v. Allen standards. If you just come in and say, you know what, we don't know what happened, which is basically what they did, how can the district court possibly evaluate whether that neglect is excusable or not? There's no excuse. Well, you know, in the context of relief from default judgment, what the case law tells us about excusable neglect is the kind of mistake or neglect, it's an odd form of thing to say excusable neglect. As I read the cases, if it's neglect, it's almost inescapably excusable. If it's somehow a deliberate or bad faith attempt to avoid a duty, that's what's not excusable. But if it's just a screw-up, that is to say neglect, as I read the case law, there are a lot of cases out there that will excuse that, assuming that there's a meritorious defense and no other evidence of abusive conduct. I agree completely. Negligence, and I agree with American bankers, mere negligence isn't enough anymore. The DCI group made that very clear. And you've not shown anything more than that. All we know is we've got this black box that goes in, it doesn't come out. But it's their burden. It's not my burden. It's their burden to come forward. And, again, I don't think we can shift over the language of the rule that requires some excusable neglect. Well, I think what Judge Fletcher is saying, that as a practical matter, if there is no evidence of game playing or bad faith or manipulation of the system, it's pretty much excusable neglect. But here we don't know. But the judge made that finding. It was not intentional. They were not trying to play with the time or anything like that. They found it was not intentional. The judge did make a comment on that, and I want to get to that in a minute, because I think the Mesel case has altered the standard. But, again, we don't know. We don't know if they did it intentionally or not, because they didn't bring forward the two people that got this complaint to explain it. And I just simply don't believe that a defendant can just come in and say, you know what, don't know what happened, so let us out of this, because there's no prejudice and there's a meritorious defense. The judge could have well gone the other way. He said, if you don't know what happened, then I'm not going to relieve you from it. But he did it. Okay, so now let's look at the second part, and that is we have these Falk v. Allen factors, three factors. The question is, are they applied disjunctively, or are they applied conjunctively? Kind of a balancing test, which is what the district court did. Over and over again, and again in Mesel, or however you pronounce that case, this court has said, these are disjunctive factors. And if you have notice of a complaint and you don't answer, and then Mesel added one more factor, if you're a sophisticated party, then you lose. They pretend to be sophisticated. Yeah, then you lose. And, you know, there's one court, I think, that said it best. Well, I think any difference that those cases, in all those cases, the default was not set aside. Does that make a difference? And here it was. Well, I don't think so, other than, again, what we're talking about is the legal rule. There isn't a lot of cases where the court has come in and said, you know what, we're going to overturn the judge's discretion to set aside this default judgment. That's why, because it's discretion. And generally, whatever the district court does is within its discretion. And I think that you're right that those cases say that's enough to allow the judge to decide to keep the default in place. But those cases don't say the judge must do that. That's what I see as the difference. And you may be right. And that's why, at the very least, I would like you to rule as a matter of law that the default judgment shouldn't be set aside. At the very least, we need to remand this back to the district court because the district court applied the wrong rule. The district court was not aware that if you found culpability, that alone was enough to set aside the default. See, I'm not sure with that. Our case law is really kind of ambiguous on the point. I mean, we say, you're right, we clearly say, and we've said it more than once, that it's injunctive. But then look at what we do instead of what we say. We mush them all together and say, yeah, this either works or it doesn't work. Well, and you may be right. I mean, there are some murky cases out there. There are cases. I mean, I make no sort of excuses. The district judge himself said, you know, the case law is not all that clear on the Ninth Circuit on this. I would agree with that, although there are some very clear cases, franchise holding being one of them, that basically says straight out, if you have notice and you don't answer, you lose. And Mezzo came in. Our Pioneer Investment case really kind of set the tone for there being a great deal of leniency in this area. Pioneer Investment does. Slightly different cases. Those are cases where someone's missed a deadline. You know, you file your summary judgment briefly. You miss a bankruptcy filing as in the Pioneer case. Those are different than the default cases because that. But the language of Pioneer Investment is that, you know, you look at all the circumstances. The intent is for cases to be heard on their merits. Absolutely. As opposed to through decided through default. No question about it. And the courts say that there has to be exceptional circumstances. You know, there certainly is a strong preference for hearing the case on the merits. But there's also a strong policy in favor of the finality of judgments. And that's what the TCI group court said. You have to weigh. But you don't weigh the fault factors. See, that's where the district court got confused. You don't weigh the court fault factors. You weigh this interest in finality versus the interest in wanting to hear the court on the merits. And I think, and if you go back and read the court's opinion, the court did not understand that it could, on the basis of the finding of culpability, refuse to set aside this judgment. I'm not sure that's clear from the record that the district, I'm pretty sure the district court judge knew that it could set aside the default judgment and it could keep the default judgment in place. Otherwise, there would be no reason for the hearing. I'm not sure the district court judge had the impression that it could, that it didn't have any discretion. Well, I think if you read the introduction, the legal part, the judge pointed out that we argue that it's disjunctive and therefore any one factor is enough. The court said, I don't agree with that. I think you have to balance these three factors. I don't know that I disagree with the court on that. I don't think just because, I don't think our case law dictates that if you find fault, that you automatically have to deny the motion to lift the default. I don't think our case law says that. And I think the language in at least one of those cases does talk about a balancing. Well, TCI group talks about a balancing, but again, it's between the interest in finality, balanced against the interest in wanting to hear the case on the merits. That's completely different than balancing culpability versus meritorious defense versus prejudice. And the TCI group case very specifically says, you know what? If there's no meritorious defense, that's it. That's the end of the discussion. We don't need to look at the other ones. And they say if there's prejudice to the plaintiff, that's it. We don't need to look at anything else. That ends the discussion. So why wouldn't that be the same way with culpability? Because, again, if you think about it, if there's culpability, by definition, that means the neglect was inexcusable. That's not how we interpret it, though. That's the problem. We haven't ruled that way. I think the cases stand for that proposition. And, again, it — So the judge should ignore whether there's a meritorious defense and if there's no prejudice, or a prejudice could be cured, like in this case the judge decided. So culpability trumps the others? I think it does. What does disjunctive mean? What did the court mean just a year ago when it says application of these factors is disjunctive? And any one of those factors is enough to allow the judge to set aside. I think it means that the court, if the judge used that to deny the motion to set aside, the court would be acting within its discretion, but does not have to. I think that's enough for the court to make the decision, but it's not mandatory for the court to make the decision. Okay. I think that's what that means. And if I go with that, if that's correct, then the district court simply did not understand that. The district court was balancing these factors. The district court was not aware that the culpability alone was enough. He did not apply these disjunctively. He said that even if there's culpability, that's not enough for me to set aside or to deny this motion. He then looked to balance the prejudice. That's within his discretion, though. He's balancing everything. He's saying, yeah, they're culpable, but it's not bad faith. So it's not really on balance looking at the fact that there's a meritorious defense and, you know, there's prejudice, but it can be cured. So when I look at everything, I'm in equity, and when I look at everything, there's not enough here to warrant denial of the motion. That's what classically within his discretion. It is classic, again, though, if you apply the correct legal rule. And I feel like I'm being redundant, and I apologize, but we still have the language of CR-61, which says there has to be some excuse. They did not provide any excuse. Bottom line, we're not reviewing this de novo. So we're looking at the bottom line decision that he made and trying to determine whether or not he abused his discretion in making that decision. I think it's only fair to send it back to the district court and say, Miesel, which the court didn't have the benefit of when it made its decision, it was decided right around the same time, Miesel makes it very clear that these are applied disjunctively, and you can, if you find culpability, that's enough to deny the motion. Okay. I think we've got your argument in hand. You've got a minute left. Let's hear from the other side, and then you'll have a chance to respond. Good morning, Your Honor. Bill Trace on behalf of American Bankers. I'd first like to thank you for allowing me to appear here pro hoc on behalf of my client from Louisiana. I appreciate that. The plaintiffs start with the thrust of their argument is what did American Bankers do wrong? And we fell on our sword to the lower court. We fell on the sword here. We screwed up. We did not send the lawsuit from the parent corporation over to the flood unit, which is in Scottsdale. And you screwed up before that, too. I mean, you had a pattern of simply not responding to this claim. So the failure to respond to the lawsuit was only consistent with the already existing, ongoing pattern of behavior of blowing off this particular claimant. According to the plaintiffs. But when we got to the actual trial in the merits, that was not the case. There was constant communication with the plaintiffs with regard to we need further documentation. And the documentation was needed because under federal regulations. If you look at the oral argument. That's what was required. A very lengthy oral argument, and we explained the. Did you answer the question? I mean, it was under federal regulations. That is correct. Is that what you relied. I mean, that was your excuse. That is correct. That is correct. We have to compare apples to apples in the documentation aspect in order to consider a supplemental claim. And so my presentation is going to be broken into two parts. The first part is the legal standard. And Judge Rawlinson, you sort of stole my thunder here. But what the plaintiffs are advocating for is that if the court finds any one of the fault factors, then the lower court must maintain a default judgment. And that's not the law within the Ninth Circuit. We start with three premises. The first premise is default judgments are extreme, extreme circumstance. It's a drastic step. The second premise is whenever possible, cases should be decided on the merits. And third, if a defendant timely seeks that relief and there is a meritorious defense, then any doubt should be resolved in favor of setting aside that motion for default. So why didn't your client bring in the people to explain what happened? There was no explanation. We do not know why the legal department at the Parent Corporation of Atlanta did not forward it to Scottsdale, which is where the flood unit is. Our explanation is it didn't get there. And so the court looked at that. And actually, if you read the decision, Judge Sutter was looking at all the cards on the table and actually chastised American bankers regarding it. And I'll get to that in just a second. But what we have here is we have several legal twos within the Ninth Circuit. I want to follow up on Judge Rawlinson's question because I don't think you quite answered it. If there's been a screw-up like this in a company, a company will ordinarily try and figure out on whose desk it was last seen, who didn't forward it, and so on. I would be astounded if your company did not conduct some sort of an internal investigation to figure out who screwed it up. I think you know more than I. We have no idea, Your Honor. I mean, if you're a well-run company, you do have an idea because you try to figure out what went wrong. And we tried to figure that out. And the person at the legal department at Assurant failed to forward it to the department at Scottsdale. The flood unit is in Scottsdale. Patricia Quinn, who issued the affidavit, she is the flood coordinator for the entire country. That's where we dropped the ball. It did not get sent from Assurant in Atlanta to American bankers at Scottsdale. It just got put in a file somewhere. Correct. The email was not forwarded. There is a link, and the plaintiffs have proven that. There's a link to a PDF, and it did not get forwarded to American bankers in Scottsdale. Now, and you probably have, you know why, or at least you know what the person who didn't forward it said as to why. The person could have said, you know, I think these claims coming out of the Skookum Truck River down by Centralia, they're all fraudulent. I hate these guys. I'm just going to put it in the circular file. Or the person could have said, you know what, I was having a bad day or a bad week, and I just failed to do it. I mean, that person said something. Correct. And that's where the judge had looked at. The judge said, you know what. And you didn't say to the judge what that person said. You just said the person didn't forward it. Correct. And Judge Settle looked at that and said, you know, I find American bankers did not do an adequate investigation. I cannot argue with that. We said the why, but we didn't go further into the why that was presented to the court, and the court chastised us for that. Well, your client certainly responded once they got notice of the default judgment. That's correct. And that they had to pay this huge amount. That was like less than a week later. That's correct. In that situation, it did get forwarded to Scottsdale immediately. Of course. And immediately. What we have is there are several legal tools that the Ninth Circuit has for the lower courts to make this call, whether or not I'm going to invoke this drastic remedy, or do I let the case go forward on the merits. And we have the TCI case, which does do a balancing. And what I submit to you is that your case law is not inconsistent with each other. There's just various tools for the lower court. The TCI case allows a lower court to do a balancing of all three of those factors. What the franchise holding case is. It doesn't. I mean, it says if there's no meritorious defense, end of game. That doesn't sound like balancing to me. Well, and then you have the franchise holding case where it said that if you find any one of those, that is sufficient for the lower court. It's not mandatory, but it's sufficient. And I'm quoting from the Mesley case. The Mesley case actually looked at the TCI case and looked at all three of those factors in deciding that case. So that's where you have these various tools for the lower court to do that. And it's at the discretion of the lower court. So do you agree with opposing counsel that the district court judge did not understand the rubric under which he was deciding this case? Absolutely not. The judge was looking at everything. And I think in this case it was a very good situation of a lower court looking at everything and deciding what is the best thing to do. And that gets me to my next part of my presentation is what did the lower court do? What are we looking at? The first thing is when the motion to vacate was filed, plaintiffs opposed it and said, wait, I've got actual knowledge, actual notice here, a letter to David Smith, an American banker, with the lawsuit. And judge, if you are considering vacating this default judgment, I want to take his deposition and the process server. And the court says, okay, I want more in front of me. I want to look at everything. And allow those depositions to go forward. And said, American bankers, that's on your nickel because you're the moving party. And so the plaintiffs took the deposition of David Smith. And he said, I did not get this lawsuit, so you had competing testimony. Then the next thing, the judge allowed supplemental briefing. That occurred. Then the judge says, I want to hear oral argument. And so we had a very lengthy oral argument and went up there and talked with Judge Settle. And he heard everything. And he said it was a close call. And he says, I'm going to look at all these factors. And the court had ruled, and the court had touched on it earlier, is that, yeah, while American bankers failed to adequately investigate this, I do not find that it was intentional or it was in bad faith. And so what the court did next was he said, this is not like TCI cases where there was an intentional give you the wrong address or refuse to accept service. I do not find that in this particular case. So it was not a situation of willful or devious or anything like that. And then with the court, the court was looking at everything because Judge Settle had read the case law. And NFIP cases are a horse of a different color. It's totally different. So in the context of the flood program, there is no bad faith. There is absolutely no financial incentive on the insurance company. Let me ask you a somewhat different question. How does your company respond to untimely claims? I don't understand what untimely claims. Someone has a policy. The policy says you must make a claim within a year. The person makes a claim within a year and six months. What do you do? That's a very good question. Under the policy, it's 60 days. And that proof of loss requirement is a very, very strict rule. It's very harsh. And Judge Settle considered that. What happens in those situations, the company is always looking at supplemental claims because we have a financial incentive. I think the short answer is you deny the claim because it's untimely. Of course. You have to deny the claim because the insurer did not follow the conditions precedent. Hang on a second. So you'll deny an untimely claim, probably an untimely claim even by a day or two, and yet you want to get out from under your failure to respond to a lawsuit. Correct. And Judge Settle looked at that. And Judge Settle, he read the case law and realized that this proof of loss issue is a problem here. And he asked me, what if I find excusable neglect for you American bankers? What's to stop you from coming in early in this case and filing a motion for summary judgment, shutting the case down because I'm obligated to file the Ninth Circuit case law that says no proof of loss, you're barred. So the court considered that. And I looked at the court and I told Judge Settle as an officer of the court, if you will vacate the default judgment because everybody agrees that the underlying default judgment included items that were specifically excluded under the flood policy and include extra contractual claims which were barred. If you will vacate that, issue a Rule 16 scheduling order, open up to discovery. Let's find out, are they owed any additional fines? Because if they are, we will go seek a waiver from FEMA of that proof of loss requirement because we make money by paying more to the home rates, unlike any other insurance. There's absolutely no financial incentive for American bankers not to answer a lawsuit, not to deny a claim, I mean not to consider a supplemental, and also not to answer the lawsuit because it's not American bankers' money in legal fees. They're not going to come out of pocket on legal fees on a lawsuit. That also is borne by the U.S. Treasury. You're just processing the claims for the government. That is correct. And we are bound by the Appropriations Clause and by the arrangement, which is found at 44 CFR Part 62 Appendix A, of what our duties are. Well, I think my point is obvious enough, which is to say, I don't really like a situation in which you're coming in here pleading for mercy for having failed to comply with something that's very obvious, which is say you're going to respond to a lawsuit. And on the other hand, you say, you know, somebody files an out-of-time claim, they lose. It just doesn't seem very fair to me. Well, in the context, those are two different situations. In this case, we did not invoke that. And Judge Settleman considered that. I understand that perfectly. Okay. In this case, because of what you did, you're trying to say, okay, we'll try to be nice. But Joe Smith's claim, you know, a different claim, you understand the point. That is to say, you play hardball with your claimants and you want a little mercy here. Well, to respond to that, Judge, the bulk of the NFI litigation in the last three years has been from Hurricane Katrina, where I'm from. And there were very few of those summary judgments filed down there because, and you can call any one of those judges, and I explain this to Judge Settle, our law firm does 90 percent of the work. This is what we do. And we were constantly working because a lot of people had missed that deadline. And we worked with a lot of those insurers to find, actually, we had 2,500 lawsuits, and there was less than 200 summary judgments that actually, and the ones we filed the summary judgment on were the ones we just could not find any more funds that are owed. So there's no financial incentive for us to come in because it is a heavy hammer, the way the statutes are set up. But we don't implore that heavy hammer unless it is absolutely, there's just no more funds that were owed. And you did pay some funds in this case, correct? That's correct. And what Judge Settle, when he looked at all of this, he says, all right, instead of just doing, I'm going to make you pay attorney's fees, he punished American bankers. And he said, hey, you know what, you're going to pay attorney's fees, you're going to pay their mortgage payment, you're going to pay their rent while they're in Idaho, you're going to pay their travel. And so the judge says, all right, I'm going to try as my equitable powers to have this even footing. And said, you're going to work with them if you find any additional funds to go seek a waiver of the proof of loss. Is that money from federal funds or from American funds? That's American bankers' money, absolutely. And so when we went through discovery, we couldn't find any additional funds. So we never went to seek that waiver. And so we gave, Judge Settle gave them their day in court, which is a three-day trial, expert testimony, fact testimony. The first day of the trial, Judge Settle asked me, what are you going to do about this proof of loss? Judge, as I said before, at the end of the trial, if you find additional funds, you will go seek the waiver from FEMA. But at the end of the day, when the plaintiffs had their day in court, he could not find a single dollar more that was owed under the flood policy. And so the judge did exactly in considering all of the chess pieces, realizing, hey, this is a different program. There are some really uneven, as you alluded to, unevenness as far as between plaintiff and defendant because of the strict rules that are enforced against these insurers. But it is a federal program. Realized all of that and used his discretion and said, well, I think this is going to go forward. He sanctioned American bankers and let them have their day in court. Any other questions? Thank you. Thank you for allowing me to be here. I want to respond briefly to the two different aspects. One, and your questions, I think, were appropriate. When they say, well, you know, we just didn't send it to Arizona, there's no evidence of what they did to it. There's no excuse, no explanation, no nothing about what the legal department did when they got that. So what do you want us to do? Send it back to Judge Settle so that he can have another hearing on this issue? I do. I mean, again, ideally, I'd like you to say the word excusable has some meaning in the rule. And without an excuse, you never even get to the fault factors. And so if you have this hearing and we still don't know what happened, then what? Well, the key is if we're going to send it back to Judge Settle, we send it back with a message, and that is Judge Settle was wrong when it evaluated these cases. And I'm looking at excerpt of Record 10. The court said the issue is whether you applied disjunctively or conjunctively. And he said, compare TCI, which he says in a parenthetical, suggesting that the analysis for consideration of a motion to set aside a default judgment involves a balancing of the fault factors with franchise holding two, stating that the fault factors are disjunctive. The court says, I adopt the TCI group standard. Well, that standard's wrong. TCI does not say, does not even hint that you balance the fault factors. Judge Settle was simply wrong when he analyzed these cases. And I think you send it back to him and say, Judge Settle, this is the law. It's disjunctive. There's no balancing of the factors. And see what he does with it. And then he can do, like you say, kind of mush it all together and figure it out. But you have to have the correct legal standard in order to properly do that. Okay. Thank you very much. Thank you. Thank you both sides for good arguments in this case. The case of Brant v. American Bankers Insurance now submitted for decision and we're adjourned for the morning.
judges: Gonzalez, Fletcher W. , Rawlinson